IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

PITTSBURGH

| | |
|---|---|
| KAYLA ANDRES, | ) |
| Plaintiff, | ) 2:24-CV-00920-MJH |
| vs. | ) |
| TAKEDA PHARMACEUTICALS AMERICA, INC., | ) |
| Defendant, | |

## MEMORANDUM OPINION

On May 28, 2024, Plaintiff, Kayla Andres filed the initial complaint in this matter in the Court of Common Pleas of Washington County, asserting claims under the Pennsylvania Human Relations Act ("PHRA"). On June 25, 2024, Defendant, Takeda Pharmaceuticals America, Inc., ("Takeda") removed the matter to this Court. (ECF No. 1). On August 15, 2024, Ms. Andres filed an Amended Complaint, in which she brings two claims under the PHRA. (ECF No. 10). On August 26, 2024, Takeda filed a Motion to Dismiss Ms. Andres' Amended Complaint and accompanying brief. (ECF Nos. 11 & 12). On September 9, 2024, Ms. Andres filed a Brief in Opposition to Takeda's Motion to Dismiss. (ECF No. 14). On September 16, 2024, Takeda filed a Reply. (ECF No. 15). The issues in this matter are fully briefed and ripe for disposition. For the following reasons, Takeda's Motion to Dismiss will be granted.

### I.   Statement of Facts

On June 6, 2020. Plaintiff, Kayla Andres, began working for Takeda as a Field Sales Representative in Pittsburgh, Pennsylvania. (ECF No. 10, at ¶¶ 12-13). On September 10, 2021,

1

Takeda initiated a vaccination mandate on its employees who called on customers or patients. (ECF No. 12-1). Takeda employees were required to be fully vaccinated against COVID-19 by November 1, 2021. (*Id.*). On September 24, 2021, Ms. Andres submitted a religious exemption request from the vaccine mandate. (ECF No. 10, at ¶ 17). On October 14, 2021, Takeda denied Ms. Andres' religious exemption request, and her employment was terminated on November 5, 2021. (*Id.* ¶ 18).

Ms. Andres alleges that some individuals, who had submitted medical exemption requests, were permitted to work remotely. (*Id.* ¶ 19). Ms. Andres' termination letter indicated that her exemption request was denied, because her position required face-to-face interaction, and she could not work remotely. (*Id.* ¶ 20). After her termination, Ms. Andres applied for three remote positions at Takeda. (*Id.* ¶ 22). On March 16, 2022, she applied for a Patient Recruitment and Retention Lead position. (*Id.* ¶ 23). On March 17, 2022, she applied for a Diversity, Equity, and Inclusion Operations Coordinator position. (*Id.* ¶ 24). On April 18, 2022, Ms. Andres applied for a Neuroscience Business Unit Complaint Operations Lead position. (*Id.* ¶ 25). Ms. Andres alleges that she was well qualified for all of these positions and that Takeda ultimately chose less-qualified individuals for the positions or simply closed the positions so they did not have to hire Ms. Andres. (*Id.* ¶¶ 26-27).

## II.      Relevant Legal Standard

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). "To survive a motion to

dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The Supreme Court clarified that this plausibility standard should not be conflated with a higher probability standard. *Iqbal*, 556 U.S. at 678. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556); *see also Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Factual allegations of a complaint must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. A pleading party need not establish the elements of a *prima facie* case at this stage; the party must only "put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element[s].'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009) (quoting *Graff v. Subbiah Cardiology Assocs., Ltd.*, 2008 WL 2312671 (W.D. Pa. June 4, 2008)); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016).

Nonetheless, a court need not credit bald assertions, unwarranted inferences, or legal conclusions cast in the form of factual averments. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n.8 (3d Cir. 1997). The primary question in deciding a motion to dismiss is not whether the plaintiff will ultimately prevail; but rather, whether he or she is entitled to offer evidence to establish the facts alleged in the complaint. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000). The purpose of a motion to dismiss is to "streamline[] litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989).

Furthermore, "in evaluating a motion to dismiss, courts are not limited to the complaint, but may also consider evidence integral to or explicitly relied upon therein." *Tanksley v. Daniels*, 902 F.3d 165, 172 (3d Cir. 2018) (internal quotations omitted). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citation omitted).

### III.    Discussion

#### A.  PHRA Disparate Treatment Claim

Takeda argues that Ms. Andres fails to plead sufficient facts to establish a disparate treatment claim under the PHRA, because Ms. Andres does not plead any facts suggesting that Ms. Andres' religion had anything to do with her termination. (ECF No. 12, at 8). Ms. Andres argues that she pleads sufficient facts to establish a disparate treatment claim under the PHRA. (ECF No. 13, at 2-4).

To establish a disparate treatment claim based upon religion, Plaintiff "must show that [she was] singled out and treated less favorably than others similarly situated on the basis of [her] religious beliefs." *Doe(s) v. Pittsburgh Reg'l Transit*, 684 F. Supp. 3d 417, 429 (W.D. Pa. 2023) (quoting *White v. Gallagher Bassett Servs.*, 257 F. Supp. 2d 804, 808 (E.D. Pa. 2003)).[1] That is, Plaintiff "must demonstrate that … nonmembers of the protected class were treated more favorably" than she was. *Abramson v. William Paterson Coll. of N.J.*, 260 F.3d 265, 281–82 (3d

---

[1] The Court relies on federal case law throughout this opinion. As acknowledged by Pennsylvania's appellate courts and the Third Circuit, "claims brought under the PHRA are analyzed under the same standards as their federal counterparts and, therefore, Pennsylvania courts use federal interpretations of the federal anti-discrimination statutes to guide and inform our interpretations of the PHRA[.]" *Bowser v. Clarion Cnty.*, 206 A.3d 68, 75 (Pa. Commw. Ct. 2019) (internal quotation marks and citation omitted); *Kelly v. Drexel Univ.*, 94 F.3d 102, 105 (3d Cir. 1996) ("Pennsylvania courts … generally interpret the PHRA in accord with its federal counterparts[.]").

Cir. 2001). In the context of a failure to hire claim, to establish a prima facie case of discrimination, Plaintiff must show "(1) [s]he belongs to the protected category; (2) [s]he applied for and was qualified for a position for which the covered employer was seeking applicants; (3) despite [her] qualifications, [s]he was not hired; and (4) after [her] rejection, the position remained open, or was filled in a manner giving rise to an inference of discrimination." *Alja-Iz v. U.S. Virgin Islands Dep't of Educ.*, 626 F. App'x 44, 46 (3d Cir. 2015) (citing cases). The fourth element can be satisfied either by showing that "after [the plaintiff's] rejection, the position remained open and the employer continued to seek applicants" or, in the alternative, "a rejection of plaintiff accompanied, or followed by, a filling of the job with a person not belonging to the protected category." *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951 (3d Cir. 1996). Additionally, because "[a]n employee's religion … is often unknown to the employer," the Third Circuit also requires plaintiffs asserting religion-based discrimination claims to show, as part of the prima facie case, that "the employer knew about the plaintiff's particular" religious beliefs. *Geraci v. Moody-Tottrup, Int'l, Inc.*, 82 F.3d 578, 581 (3d Cir. 1996).

Here, Ms. Andres fails to plead sufficient facts to establish a religion-based disparate treatment claim under the PHRA. Ms. Andres provides only conclusory statements in her Amended Complaint in support of her religion-based disparate treatment claim. Ms. Andres pleads that Takeda did not hire her because of her religion, but Ms. Andres never alleges what religion she practices. Additionally, Ms. Andres states, in a conclusory fashion, that she was qualified for each of the three remote positions that she applied for. She does not provide the required qualifications for the positions. Ms. Andres also uses conclusory language to assert that those who were hired for the positions she applied for were less qualified than her but provides no further detail about who was hired for any of the positions. Thus, there is no way to know

whether any individuals that were hired were qualified or even similarly situated to Ms. Andres. As such, Ms. Andres does not plead sufficient facts to establish a religion-based disparate treatment claim under the PHRA. Takeda's Motion to Dismiss, as to Ms. Andres' religion-based disparate treatment claim, at Count I of the Amended Complaint, will be granted. As the Court cannot say that amendment would be inequitable or futile, Ms. Andres will be granted leave to amend her complaint.

### B. PHRA Retaliation Claim

Takeda argues that Ms. Andres fails to plead sufficient facts to establish a retaliation claim under the PHRA, because Ms. Andres' religious exemption request was not a protected activity, and she cannot show that her religious exemption request was causally connected to the Takeda's decision not to hire her for the three remote positions. (ECF No. 12, at 13). Ms. Andres argues that she pled sufficient facts to establish a retaliation claim under the PHRA. (ECF No. 13, at 4-6).

"To establish a prima facie case of retaliation under Title VII, a plaintiff must show that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Selvato v. SEPTA*, 658 F. App'x 52, 56 (3d Cir. 2016) (quoting *Nelson v. Upsala Coll.*, 51 F.3d 383, 386 (3d Cir. 1995)) (internal quotations omitted).

i. Protected Activity

"With respect to 'protected activity,' the anti-retaliation provision of Title VII protects those who participate in certain Title VII proceedings (the 'participation clause') and those who

oppose discrimination made unlawful by Title VII (the 'opposition clause')." *Moore v. City of Philadelphia*, 461 F.3d 331, 341 (3d Cir. 2006). "To engage in protected activity, the employee must either participate in certain Title VII proceedings … or oppose discrimination made unlawful under Title VII …." *Theriault v. Dollar Gen.*, 336 F. App'x 172, 174 (3d Cir. 2009) (citing *Moore*, 461 F.3d at 331).

The question of whether a religious exemption request is a protected activity under Title VII has not yet been contemplated by the Third Circuit. However, Takeda argues that the conclusions made by the Sixth and Eighth Circuits, that a religious exemption request is not a protected activity under Title VII for the purposes of retaliation claims, are correct. (ECF No. 12, at 14). In *Equal Emp. Opportunity Comm'n v. N. Mem'l Health Care*, the Eighth Circuit held that a plaintiff fails to establish a prima facie case for "opposition-clause retaliation" by alleging that a religious exemption request was denied, because "merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation." 908 F.3d 1098, 1102 (8th Cir. 2018). In *Stanley v. ExpressJet Airlines, Inc.*, the Sixth Circuit held that "a request for an accommodation does not constitute protected activity under Title VII, which clearly delineates two options: opposition to discriminatory practice or participation in an investigation." 808 F. App'x 351, 358 (6th Cir. 2020).

Ms. Andres argues that this is an issue of first impression for the Third Circuit and she respectfully disagrees with the Sixth and Eighth Circuits conclusions. (ECF No. 13, at 4). Ms. Andres argues that district courts in this circuit have found that religious exemption requests are a protected activity under Title VII, for purposes of retaliation claims. *Id.* In support of this proposition, Ms. Andres cites *Shields v. Main Line Hosps., Inc.*, in which the district court stated that "an employee's request to accommodate her religious beliefs constitutes a protected activity

7

under Title VII." 700 F. Supp. 3d 265, 275 (E.D. Pa. 2023). In Takeda's Reply, they contest Ms. Andres' argument, citing a string of cases from district courts within the Third Circuit that adopt or approve of the Sixth and Eighth Circuits conclusions.[2] (ECF No. 15, at 7). After consideration of both arguments, the Court agrees with Takeda. Title VII's anti-discrimination provision protects those who either oppose unlawful discrimination under Title VII or participate in Title VII proceedings. *Moore*, 461 F.3d at 341. Here, Ms. Andres submitted a religious exemption request that was denied. Shortly thereafter, Ms. Andres' employment was terminated. The religious exemption request itself was not in opposition to any unlawful discrimination, nor was it participation in a PHRA or Title VII procedure. As such, Ms. Andres fails to plead facts to establish that her religious exemption request was a protected activity for the purposes of a PHRA retaliation claim.

ii.   Causal Connection

Even if Ms. Andres' religious exemption request was a protected activity, she has not plead facts sufficient to establish that the religious exemption request was causally connected to Takeda's decision not to hire her for the three remote positions that she applied for at Takeda.

---

[2] *See Bushra v. Main Line Health Inc.*, 709 F. Supp 3d 164, 172-73 (E.D. Pa. 2023); *See also Divine Equal. Righteous v. Overbrook Sch. for the Blind*, WL 4763994, at *10 (E.D. Pa. July 26, 2023) ("Merely applying for a religious accommodation—rather than opposing the allegedly unlawful denial of a religious accommodation—does not constitute protected activity for the purpose of a Title VII retaliation claim. … Accordingly, Plaintiffs may not rely on merely applying for a religious accommodation as a form of protected activity."); *Al Refat v. Franklin Fin. Servs. Corp.*, 2021 WL 2588789, at *6 n.6 (M.D. Pa. June 24, 2021) (citing *N' Memorial* with approval for the proposition that "merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation" and noting that "Title VII and the ADA are distinct statutes, and the Supreme Court has rejected the contention that Title VII includes a freestanding failure-to-accommodate claim, in direct contrast with the ADA"); *Spratley v. KidsPeace Corp.*, 2023 WL 3007933, at *18 (E.D. Pa. Apr. 19, 2023) ("an employee likely fails to show participation in a protected activity because merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation") (quoting *Al Refat*, supra; internal quotation omitted); *Garza v. Philhaven*, 2024 WL 3904984, at *7 (M.D. Pa. Aug. 22, 2024) ("merely requesting a religious accommodation is not the same as opposing the allegedly unlawful denial of a religious accommodation") (quoting *Al Refat*, 2021 WL 2588789, at *6 n.6) (internal quotation omitted).

To show the existence of a causal link, a plaintiff must plead facts showing "an unusually suggestive temporal proximity" or "a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). As regards temporal proximity, the Third Circuit has found that a period of "three months between the protected activity and the adverse action, without more, cannot create an inference of causation …." *LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n*, 503 F.3d 217, 233 (3d Cir. 2007). "'Although there is no Brightline rule as to what constitutes unduly suggestive temporal proximity,' unduly suggestive temporal proximity usually falls within periods of days or weeks, not months." *Par. v. UPMC Univ. Health Ctr. of Pittsburgh*, 373 F. Supp. 3d 608, 636 (W.D. Pa. 2019) (quoting *LeBoon*, 503 F.3d at 233)).

Ms. Andres alleges that she submitted her religious exemption request on September 24, 2021. (ECF No. 10, ¶ 17). Following her termination, she applied for three new positions at Takeda. (*Id.* ¶ 22). Ms. Andres applied for the first and second positions on March 16th and 17th—six months after submitting her religious exemption request. (*Id.* ¶¶ 23-24). Ms. Andres applied for the third position at Takeda on April 18, 2022—nearly seven months after she submitted her religious exemption request. (*Id.* 25). Ms. Andres has not pled what dates she was told she would not be hired for the remote positions at Takeda. However, the passage of time between Ms. Andres' religious exemption request and the dates she applied for the three remote positions at Takeda is far too large to suggest any causal connection exists between her religious exemption request and Takeda's decisions to not hire her for the remote positions. Additionally, Ms. Andres does not plead any facts to suggest that any pattern of antagonism existed during the interval between submitting her religious exemption request and applying for the remote positions at Takeda. Thus, Ms. Andres does not sufficiently plead a causal connection between

her religious exemption request and Takeda's decision not to hire her for any of the three remote positions. Takeda's Motion to Dismiss Ms. Andres' PHRA retaliation claim, at Count II of the Amended Complaint, will be granted. As further amendment would be futile, Ms. Andres will not be granted leave to amend this claim.

### IV. Conclusion

For the reasons stated above, Defendant's Motion to Dismiss will be granted in full. Ms. Andres' claim for religious discrimination under the PHRA, at Count I of the Amended Complaint, will be dismissed, with leave to amend. Ms. Andres' claim for retaliation under the PHRA, at Count II of the Amended Complaint, will be dismissed, without leave to amend. Ms. Andres may file another amended complaint on or before November 14, 2024. If Ms. Andres does not file an amended complaint by that date, then the clerk shall mark this case as closed.

DATE: 10/31/2024

Marilyn J. Horan
United States District Judge